UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANTHONY R EFTHEMES** | **CASE NO. 2:19-CV-01409** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **AMGUARD INSURANCE CO ET AL** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 27] filed by defendants on the issue of liability, in response to the tort suit brought by plaintiff Anthony R. Efthemes. Efthemes opposes the motion. Doc. 33.

## I.
### BACKGROUND

This suit arises from an accident that occurred on May 19, 2018, and resulted in injuries to Efthemes, a Louisiana State Trooper. On that date Efthemes was assisting in the emergency pursuit of a vehicle on I-10 in Calcasieu Parish, Louisiana, and was instructed to deploy "stop sticks" along the interstate to intercept the target car. Defendant Malik Aleem approached that location in an 18-wheeler near the target car, and his vehicle hit the stop sticks as Efthemes deployed them. This collision caused a violent tug on the device cord, resulting in injuries to Efthemes's left hand. Efthemes filed suit against Aleem, his employer, and their insurer, asserting that Aleem was liable for his injuries due to his negligent failure to yield to emergency vehicles, slow down or otherwise attempt to avoid the hazard, and otherwise careless operation of his vehicle. The defendants now move for

summary judgment, arguing that the evidence shows no genuine issue of material fact as to Aleem's compliance with applicable standards of care or the role of his conduct in causing Efthemes's injuries. Doc. 27.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v.*

*Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana courts determine liability for negligence based on a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Dev.*, 916 So.2d 87, 101 (La. 2005). Through this test the plaintiff must show all of the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris,* 923 So.2d 627, 633 (La. 2006)).

Here defendants argue that they are entitled to summary judgment because Efthemes cannot prove the second, third, or fourth elements. A plaintiff's failure to prove any of the five elements is fatal to his claim. *Duncan v. Kansas City S. Ry. Co.*, 773 So.2d 670, 676 (La. 2000). Accordingly, the court will only analyze these arguments to the extent necessary to determine whether the case may proceed.

Efthemes asserts that Aleem's failure to yield to emergency vehicles and move into the right lane in time to brake before hitting the stop sticks was a substantial factor in the accident. Defendants argue, however, that Efthemes's improper deployment of the stop sticks was the primary cause of the accident. They also maintain that there is no evidence that Aleem breached his duty by improperly failing to yield.

Defendants do not dispute that Aleem owed a duty to Efthemes, but maintain that he conformed his conduct to that duty at all relevant times. The duty of a motorist in the presence of emergency vehicles is provided by statute:

> Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

La. Rev. Stat. 32:125(A). On the third element, determining the cause in fact usually requires a "but for" inquiry. *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1991). In cases involving multiple factors, however, a "substantial factor" inquiry is appropriate. *Laysone v. Kansas City So. Ry. Co.*, 786 So.2d 682, 691 (La. 2001). Under this inquiry, a defendant's negligence is a cause in fact of an accident if his conduct "was a substantial factor in bringing about the harm or injuries." *Adams v. Traina*, 830 So.2d 526, 533 (La. Ct. App. 2d Cir. 2002).

Body camera footage from one of the officers at the scene shows that the stop sticks were deployed on a busy area of the interstate, in broad daylight. At least two police cars

were parked nearby with their emergency lights activated. Vehicles slowed as they saw the police cars, but officers shouted and signaled for cars to continue. In the few minutes between when the wires were laid and the time Aleem's truck crossed, dozens of cars passed across all three lanes of traffic. During this time the officers received radio updates of the target vehicle's approach, in the middle lane at a speed of 80 to 90 miles per hour. Finally, Aleem's truck approached in the right lane behind the target vehicle, which was in the center lane and pursued by several police cars with lights and sirens activated, and the officers deployed the stop sticks. *See* Def. Exh. 6 (Body Camera Video), 07:00–11:00, available at https://www.youtube.com/watch?v=byllDaQb-Q0. A short time after the officers deployed the stop sticks, Efthemes indicated that his sticks had been snared by the 18-wheeler and his hand had been injured. *Id.* at 11:00–14:07.

Dash camera footage from one of the pursuing police cars shows that Aleem's truck first came into view at minute 09:36, traveling ahead of the target vehicle in the center lane. The target vehicle and the police cars moved at a high rate of speed while Aleem appeared to be traveling at or under the speed limit. By 10:08, Aleem began moving over to the right lane. He completed the maneuver by 10:13 and passed over the stop sticks at approximately 10:28. *See* Def. Exh. 6 (Dash Camera Video), 09:00–11:00, available at https://www.youtube.com/watch?v=vGKn2LZe_8U.

Aleem testified that he was driving at a speed of 65 miles per hour, below the 70 mile per hour speed limit. Doc. 33, att. 7, p. 10. He proceeded under the speed limit because he was "heavy"—carrying at 79,000 pound load, just 1,000 pounds below the vehicle's maximum. *Id.* at 10–11. Approximately half a mile before he had seen a state trooper

parked on the right side of the interstate with his lights flashing, and decided to stay in the middle lane. *Id.* at 15, 18. At this point he did not realize that there was a chase going on. *Id.* at 18–19, 23. When he saw the chase, he put on his turn signals and checked his mirrors so as to avoid hitting anyone, and then moved to the right lane. *Id.* at 16–17, 19. He slowed as he spotted Efthemes but was unable to avoid the area or come to a stop before the spikes were thrown out. *Id.* at 16–17. He testified that he was unable to slow down quickly because of the weight of his vehicle but that he was at a speed of approximately 40 miles per hour when he ran over the spikes. *Id.* at 17. Efthemes testified that he did not see Aleem's vehicle until he ran over the stop sticks. Doc. 33, att. 3, p. 13.

Efthemes attempts to create an issue of fact by pointing out that other, smaller vehicles traveling behind Aleem had already slowed and moved to the right by the time they were visible on the dash camera footage.[1] He argues that, because Aleem's vehicle first became visible around the 09:36 minute mark, Aleem must have become aware of the chase before then and in enough time to make his move to the right lane earlier. However, Efthemes present nothing in support of this conjecture. In light of the differentials in the other vehicles' sizes, the court does not find the comparison sufficient to create an issue of fact. Furthermore, the footage and testimony shows that the only way Aleem might have avoided the stop sticks is by braking, which he attempted to do—he could not have moved to the shoulder, where one of the officers was stationed, or to the left, where the chase was

---

[1] He also asserts, without any support, that the amount of time it took for the chase to pass Aleem shows that he must have been proceeding at a comparable rate of speed. This point might have been established through expert testimony or other competent evidence; counsel's argument is insufficient to create a dispute of fact against Aleem's sworn testimony.

taking place. There is no evidence to show that changing lanes a few seconds earlier would have given Aleem sufficient time to stop his vehicle before hitting the stop sticks or Efthemes time to move them out of the way, in satisfaction of the causation element. Instead, the available evidence shows that Aleem proceeded with due care once he became aware of the chase and then once he sighted Efthemes ahead of him. Accordingly, there is no basis for holding defendants liable.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 27] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Chambers on this 11th day of August, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**