UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**ANTHONY R EFTHEMES**          CASE NO. 2:19-CV-01409

**VERSUS**                      JUDGE JAMES D. CAIN, JR.

**AMGUARD INSURANCE CO ET AL**  MAGISTRATE JUDGE KAY

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 27] filed by defendants on the issue of liability, in response to the tort suit brought by plaintiff Anthony R. Efthemes. The court previously granted the motion on the grounds that plaintiff could not prove any negligence by the defendant driver, but that ruling was reversed by the United States Court of Appeal for the Fifth Circuit. Accordingly, the court now reconsiders the Motion for Summary Judgment based on the alternative grounds raised by defendants. Plaintiff opposes the motion and the parties have filed supplemental briefs following the Fifth Circuit's ruling.

### I.
#### BACKGROUND

This suit arises from an accident that occurred on May 19, 2018, and resulted in injuries to Efthemes, a Louisiana State Trooper. On that date Efthemes was assisting in the emergency pursuit of a vehicle on I-10 in Calcasieu Parish, Louisiana, and was instructed to deploy "stop sticks" along the interstate to intercept the target car. Defendant Malik

Aleem approached that location in an 18-wheeler near the target car. His vehicle hit the stop sticks as Efthemes deployed them.

Body camera footage from one of the officers at the scene shows that the stop sticks were deployed on a busy area of the interstate, in broad daylight. At least two police cars were parked nearby with their emergency lights activated. Vehicles slowed as they saw the police cars, but officers shouted and signaled for cars to continue. In the few minutes between when the wires were laid and the time Aleem's truck crossed, dozens of cars passed across all three lanes of traffic. During this time the officers received radio updates of the target vehicle's approach, in the middle lane at a speed of 80 to 90 miles per hour. Finally, Aleem's truck approached in the right lane behind the target vehicle, which was in the center lane and pursued by several police cars with lights and sirens activated, and the officers deployed the stop sticks. *See* Def. Exh. 6 (Body Camera Video), 07:00–11:00, available at https://www.youtube.com/watch?v=byllDaQb-Q0. A short time after the officers deployed the stop sticks, Efthemes indicated that his sticks had been snared by the 18-wheeler and his hand had been injured. *Id.* at 11:00–14:07.

Dash camera footage from one of the pursuing police cars shows that Aleem's truck first came into view at minute 09:36, traveling ahead of the target vehicle in the center lane. The target vehicle and the police cars moved at a high rate of speed while Aleem appeared to be traveling at or under the speed limit. By 10:08, Aleem began moving over to the right lane. He completed the maneuver by 10:13 and passed over the stop sticks at approximately 10:28. *See* Def. Exh. 6 (Dash Camera Video), 09:00–11:00, available at https://www.youtube.com/watch?v=vGKn2LZe_8U.

Aleem's passage caused a tug on the stop sticks, resulting in injuries to Efthemes's hand. Efthemes filed suit against Aleem, his employer, and their insurer, asserting that Aleem was liable for his injuries due to his negligent failure to yield to emergency vehicles, slow down or otherwise attempt to avoid the hazard, and otherwise careless operation of his vehicle. Doc. 1, att. 12. The defendants moved for summary judgment, arguing that (1) the evidence shows no genuine issue of material fact as to Aleem's compliance with applicable standards of care or the role of his conduct in causing Efthemes's injuries; (2) the damages alleged by Efthemes are not within the scope of any duty owed by defendant; and (3) Efthemes cannot satisfy his burden of proof under the professional rescuer doctrine. Doc. 27. The court granted the motion on the first basis and did not address the other two arguments. Docs. 45, 46. The plaintiff appealed and the Fifth Circuit reversed that ruling, remanding the matter to this court for consideration of the other two grounds for summary judgment. Doc. 49. The parties have now presented supplemental briefs on those grounds and the court considers their arguments.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara*

*v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. Scope of Duty

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana courts determine liability for negligence based on a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and*

*Dev.,* 916 So.2d 87, 101 (La. 2005). Through this test the plaintiff must show all of the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris,* 923 So.2d 627, 633 (La. 2006)).

Here defendants argue that they are entitled to summary judgment because Efthemes cannot prove the fourth element. A plaintiff's failure to prove any of the five elements is fatal to his claim. *Duncan v. Kansas City S. Ry. Co.*, 773 So.2d 670, 676 (La. 2000). Under the scope of protection/scope of duty element, the ultimate inquiry is "a question of policy as to whether the particular risk falls within the scope of the duty." *Nagle v. Gusman*, 61 F.Supp.3d 609, 625 (E.D. La. 2014) (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 293–94 (La. 1993)). Courts focus on the "ease of association" between the duty and the risk, which "encompasses the idea of foreseeability but is not based on that factor alone." *England v. Fifth La. Levee Dist.*, 167 So.3d 1105, 1110 (La. Ct. App. 2d Cir. 2015).

Efthemes alleges that the duty here arises under Louisiana Revised Statute 32:125, which sets forth procedure on approach of an authorized emergency vehicle:

> A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or

     curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
- B. When any vehicle making use of any visual signals as authorized by law, including the display of alternately flashing amber or yellow warning lights, is parked on or near the highway, the driver of every other vehicle shall:
  - (1) When driving on an interstate highway or other highway with two or more lanes traveling in the same direction, yield the right-of-way by making a lane change into a lane not adjacent to the parked vehicle, if possible with due regard to safety and traffic conditions. If a lane change is not possible, the driver shall slow to a reasonably safe speed.
  - (2) Maintain a safe speed for road conditions, if unable or unsafe to change lanes, or driving on a two-lane road or highway.
- C. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

La. Rev. Stat. § 32:125(A). Defendants maintain, however, that the duty only extends to the protection of officers driving the emergency vehicles and not those stationed on the roadside ahead. Accordingly, they assert, no duty imposed by the statute is meant to protect Ethemes from the injury he incurred. To this end defendants point to the fact that the statute references only emergency vehicles that are approaching or stationary on the roadside, and the duties of drivers in direct relationship to such vehicles. They also cite *Russo v. City of New Orleans*, 446 So.2d 331 (La. Ct. App. 4th Cir. 1984), where the court found that the duty imposed by this statute did not extend to a collision between two non-emergency vehicles:

> It must also be borne in mind that Frankhouser collided with Russo's car, not the emergency vehicle driver by Officer Campbell. Frankhouser's duty to yield was owed to the police car, not to Russo. The risk encompassed by breach of that duty was a collision with the emergency vehicle, not a private vehicle negligently driven by another motorist. Under a duty-risk analysis, therefore, Frankhouser's failure to stop before the intersection was not the legal cause of the collision with Russo.

*Id.* at 334.

Here, however, the risk is not being extended to a "private vehicle negligently driven by another motorist" but instead to another police officer on the roadway, responding to the same emergency as the authorized emergency vehicles. Given the context, and especially where the presence of multiple such vehicles signaled a possible pursuit, the duty to yield under subsection (A) could be extended to avoid a risk to other officers working on the roadway to respond to the pursuit. Based on the Fifth Circuit's ruling, issues of fact exist as to whether Aleem breached that duty by failing to yield immediately to the emergency vehicles in pursuit. Accordingly, this argument does not provide a basis for summary judgment.

### B. Professional Rescuer Doctrine

Defendants also argue that summary judgment should be granted under the professional rescuer's doctrine, "a common law rule that either bars recovery by a professional rescuer injured in responding to an emergency or requires the rescuer to prove a higher degree of culpability in order to recover." *Gallup v. Exxon Corp.*, 70 F. App'x 737, 738 (5th Cir. 2003) (citing *Mullins v. State Farm Fire & Cas. Co.*, 697 So.2d 750, 752 (La. Ct. App. 1st Cir. 1997)). The doctrine and other doctrines of assumption of risk were abrogated by the state's adoption of a pure comparative fault regime, except for those cases "where the plaintiff, by oral or written agreement, expressly waives or releases a future right to recover damages from the defendant" unless the release is invalidated by public policy concerns. *Doe v. McKesson*, 339 So.3d 524, 535 (La. 2022) (internal quotation

omitted). Defendants argue that the court left the door open to reaching the same result through different means and note its statement that:

> rather than relying on the fiction that the plaintiffs in such cases implicitly consented to their injuries, the sounder reasoning is that the defendants were not liable because they did not breach any duty owed to the plaintiffs.

*Id.* at 535. Again, however, the statute sets forth a duty to immediately yield to emergency vehicles. The Fifth Circuit has recognized fact issues as to whether Aleem timely yielded the right of way, resulting in his vehicle tracking too closely with the pursuit and crossing over the stop sticks before Efthemes had a chance to retrieve them. Doc. 49, p. 9. Accordingly, summary judgment must be denied on this basis as well.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 27] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 12th day of October, 2022.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE