UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANTHONY R EFTHEMES** | **CASE NO.  2:19-CV-01409** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **AMGUARD INSURANCE CO ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**MEMORANDUM ORDER**

Before the court is a *Daubert* Motion to Strike the Testimony of Kerry Najolia [doc. 73], filed by defendants Amguard Insurance Company, Apex Transit LLC, and Malik Aleem. Plaintiff Anthony Efthemes opposes the motion. Doc. 81.

**I.**
**BACKGROUND**

This suit arises from injuries sustained by plaintiff, an officer with the Louisiana State Police, while assisting in the emergency pursuit of a vehicle along Interstate 10 in Calcasieu Parish, Louisiana. Plaintiff was tasked with deploying "stop sticks" along the interstate to intercept the target car, which was being pursued by several other police vehicles with their lights and sirens activated. Defendant Malik Aleem, driving an 18-wheeler, approached plaintiff's point of interception around the same time as the target car and his vehicle hit the stop sticks shortly after the plaintiff deployed them. This collision caused a violent tug on the device cord, resulting in injuries to plaintiff's left hand.

Plaintiff filed suit in state court against Aleem, his employer, and their insurer, asserting that Aleem was liable for his injuries due to his negligent failure to yield

emergency vehicles, slow down, or otherwise attempt to avoid the hazard, and careless operation of his vehicle. Doc. 1, att. 12. Defendants removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. The matter is set for jury trial before the undersigned on June 10, 2024. Doc. 63.

Plaintiff has submitted a report from Kerry Najolia, who was retained to offer opinions on "policy, procedures, training, protocols, and the application of the tire-deflation devices" relating to this incident. Doc. 73, att. 13, p. 1. Defendants now move to exclude his testimony, arguing that his opinions do not satisfy the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff opposes the motion, arguing that Najolia is well qualified and offers helpful opinions based on his law enforcement experience on the plaintiff's deployment of stop sticks. Doc. 81.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles

and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B. Application**

Najolia issued two reports in this matter, in June 2021 and February 2024. Doc. 73, atts. 7 & 13. In both documents he opined that Efthemes deployed the stop sticks "as he was trained and in accordance with LSP policy, procedures and protocols." Doc. 73, att. 7, p. 8; doc. 73, att. 13, p. 8. To this end he noted the privileges accorded to law enforcement in emergency pursuit. Doc. 73, att. 13, p. 7. He also emphasized that Efthemes was trained

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

not to wrap any part of the tire deflation device around any part of his body, and instead "to hold the handle of the device, take the slack out and place the device across the road or highway." *Id.* He then concluded:

> In my opinion, Trooper Efthemes deployed the tire deflation device as he was trained in accordance with LSP policy, procedures and protocols.
> Based on my opinion, this was an emergency situation, involving numerous marked units with emergency lights and/or sirens activated pursuing the violator and/or parked on either side of the highway which provided drivers with sufficient warning that a special hazard was imminent.
> The Troopers and other Officers were driving, acting and deploying the tire deflation devices with due regard for the safety of others and themselves.

*Id.* at 8–9. He allowed, however, that the trier of fact would determine the reasonableness of each party's actions and could conclude that "Mr. Malik's actions may not have entirely or partially contributed to Trooper Efthemes's injury" if it determined that Efthemes had not followed his training. *Id.*

Defendants do not challenge Najolia's qualifications. Instead they argue that his opinions are "thinly veiled jury charges" and should be excluded due to their potential to confuse or mislead the jury. Doc. 73, att. 1, p. 9. To this end they first assert that he provided no expert analysis. They also contend that his opinions consist of vague and conclusory statements made with no connections to the sources he cited. They point to the following statements in the report, asserting that they have no documentary support and no supporting methodology:

- "The location that was chosen to deploy tire deflation devices was at the 19 Turnaround and I-10 eastbound." Doc. 73, att. 13, p. 4.

- "Both LSP Troopers positioned their units and the tire deflation devices in an authorized manner." *Id.* at 5.

- "Mr. Malik drove over the tire deflation device as Trooper Efthemes removed the device off of the roadway [and b]ased on that action, (9) nine of Mr. Malik's truck tires were flattened as he ran over the device." *Id.* at 5.

- "The tires of the violator's vehicle were flattened, and the violator vehicle came to rest." *Id.*

- "The violator vehicle was taken into custody. There were no civilian injuries or property damage noted." *Id.*

*Id.* at 12. Finally, they assert that Najolia's opinions are duplicative of those that will be elicited from two other plaintiff witnesses.

Najolia's reports, however, reflect that his opinions on Efthemes's use of stop sticks are based on his years of law enforcement experience as well as his review of discovery and relevant training materials. His application of law enforcement policies and procedures, through the lens of his experience, to the facts of this incident is within the realm of Rule 702 and potentially helpful to the trier of fact. *Accord Brown v. Strain*, 2010 WL 3523026, at *1 (E.D. La. Aug. 31, 2010). As for the challenged factual assertions, these generally go "to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *In re Katrina Canal Breaches Consol. Litig.*, 2012 WL 4328354, at *1 (E.D. La. Sep. 20, 2012) (quoting *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495590, at *4 (W.D. Tex. Oct. 21, 2004)). Finally, plaintiff may elect not to call the

witnesses whose testimony overlaps with Najolia's opinion or may elect not to elicit cumulative testimony. The court cannot determine before trial whether such overlap creates a basis for exclusion. Accordingly, there is no basis at this point for excluding or limiting the witness's testimony.

### III.
#### CONCLUSION

For the reasons stated above, the court **ORDERS** that the *Daubert* Motion [doc. 73] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 2nd day of May, 2024.

*[signature]*

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**